CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
JAN 25 2006
JOHN F CORCORAN, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IRA W. MADISON, <br> Plaintiff, | ) <br> ) Civil Action No. 7:01-cv-00596 <br> ) |
| v. | ) **MEMORANDUM OPINION** <br> ) |
| RUSSELL A. RITER, et al., <br> Defendants. | ) By: Hon. James C. Turk <br> ) Senior United States District Judge |

The issues before the court at this juncture are whether Congress exceeded its authority under the Spending Clause or the Commerce Clause or violated other, federalism provisions of the Constitution in enacting section 3 of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 20000cc through 2000cc-5. Because the court concludes that Congress properly exercised its spending power by unambiguously conditioning grants of federal funds on accommodation of prisoners' religious exercise, the court also concludes that section 3 of RLUIPA withstands defendants' federalism challenges and the Commerce Clause challenge to the statute must wait for another day.

## I. BACKGROUND

Section 3 of RLUIPA prohibits governments from enacting regulations, including rules of general applicability, or otherwise taking actions that impose a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that imposition of that burden furthers "a compelling governmental interest" by "the least restrictive means."[1] § 2000cc-1(a)(1)-(2). This strict-scrutiny standard applies any

---

[1] Numerous courts, including this one, have discussed the legal lineage of RLUIPA, see, e.g., Cutter II, 125 S. Ct. 2113, 2117-119 (2005); Madison v. Riter, 240 F. Supp. 2d 566, 568-70 (W.D. Va. Jan. 23, 2003), and the court will not here retrace the statute's heritage. For the sake of

1

time such a burden on religious exercise occurs "in a program or activity that receives Federal financial assistance," or "affects, or removal of that substantial burden would affect," interstate or foreign commerce. Id. The statute creates a private cause of action for persons who allege that a government has substantially burdened their religious conduct. § 2000cc- 2(a).[2] It is undisputed that the Virginia Department of Corrections (VDOC), the agency holding Madison in custody, receives federal financial assistance. See Def. Br., Dkt. #93, at 22.

Plaintiff Ira W. Madison, a Virginia inmate, brought this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343, and under RLUIPA. Madison states that he is a "Hebrew Israelite" and that his sincere religious beliefs require him to eat a kosher diet and celebrate Passover. He asserts that the Common Fare Diet available to VDOC inmates upon approval from the appropriate VDOC authorities would satisfy his religious dietary needs and allow him to celebrate Passover. When he twice applied for the Common Fare Diet, however, the defendant prison officials denied his request and thus failed to accommodate his religious beliefs.[3] Madison seeks monetary and permanent injunctive relief.[4]

---

convenience, RLUIPA as used in this opinion refers only to section 3 of the Act; this section, applicable to state prisoners, is the only portion of the Act at issue in this case.

> [2]Section 2(a) of RLUIPA states:
> A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution.
>
> [3]The court previously summarized Madison's allegations in support of his claims:
>> The Plaintiff claims to be a member of a particular sect of the Hebrew Israelite faith, based out of the Beth El Temple in Norfolk, Virginia. The Plaintiff argues that his faith requires him to consume a kosher diet, provided by the Department of Corrections in particular prison facilities under the name "Common Fare Diet."
>> The Plaintiff first requested the Common Fare Diet on July 27, 2000, while

2

Defendants filed a motion for summary judgment as to Madison's First Amendment claims in which they also argued that the court should dismiss his RLUIPA claims because the statute was unconstitutional on several grounds. By opinion and order entered August 23, 2002, the court granted summary judgment on behalf of Defendant Polinsky as to all claims and on behalf of the Commonwealth of Virginia as to Madison's First Amendment claims under § 1983. The court found that Madison had presented genuine issues of material fact as to the sincerity of his religious beliefs, as to the importance of the requested diet to his practice of those beliefs, and as to defendants' asserted defenses under Turner v. Safley, 482 U.S. 78 (1987) (requiring application of rational basis scrutiny for prison regulations infringing on inmates' constitutional rights) and the doctrine of qualified immunity. Accordingly, the court denied the motion for summary judgment as to Madison's First Amendment claims. The court then took the RLUIPA claims under advisement and urged the parties to settle the case.

When the parties failed to reach settlement, the court found it necessary to address the defendants' arguments that Madison's RLUIPA claims should be dismissed because the statute

---

> an inmate at Greenville Correctional Center. Local officials at the facility approved the request, but Central Classifications Services ("CCS"), a Richmond-based agency of the Virginia Department of Corrections which must review all such requests, overturned the approval upon the belief that Plaintiff had no compelling religious reason to participate in the diet, that he could satisfy his dietary needs from the regular food line, and that he had not shown a sincere belief in his religion. Plaintiff made a second request for the diet after his transfer to Bland Correction Center in March of 2001. Again, local officials approved the request but CCS reversed the decision and denied Plaintiff the diet. After his administrative appeals were denied within the prison system, the Plaintiff filed this suit on August 6, 2001.

Madison, 240 F. Supp. 2d at 568.

[4]Pursuant to an agreement between the parties, Madison has been receiving the Common Fare Diet since March 2004 on a temporary basis. See Joint Motion for Stay, Dkt. #87, at 2.

3

is unconstitutional.[5] The court took the minority view that RLUIPA violates the Establishment Clause because it has the "impermissible effect of advancing religion by favoring religious rights over other fundamental rights of prisoners." See Madison v. Riter, 240 F. Supp. 2d 566 (W.D. Va. Jan. 23, 2003), rev'd 355 F.3d 310 (4th Cir. Dec. 8, 2003), cert. denied, 125 S. Ct. 2536 (March 30, 2005). The court certified the Establishment Clause issue for interlocutory appeal, and the United States Court of Appeals for the Fourth Circuit reversed, upholding RLUIPA against the Establishment Clause challenge. Id. The Supreme Court denied defendants' petition for certioriari in Madison after reversing the decision of the United States Court of Appeals for the Sixth Circuit in Cutter v. Wilkinson, ("Cutter I"), 349 F.3d 257, 259-60 (6th Cir. 2003) (finding section 3 of RLUIPA to be violative of the Establishment Clause as favoring religious rights over other fundamental rights of prisoners), rev'd, ("Cutter II"), 125 S. Ct. 2113 (2005) (rejecting Establishment Clause challenge to section 3 of RLUIPA). This court then reinstated Madison's case to the active docket and allowed the parties and the United States, as intervener, to file supplemental briefs on the remaining constitutional arguments.[6]

---

[5]Before reaching the constitutional challenges to RLUIPA, the court found that Madison had alleged facts stating a claim under RLUIPA. See Madison, 240 F. Supp. 2d at 569 n. 2.

[6]As herein discussed, other courts have addressed and rejected constitutional challenges raised similar, if not identical, to those raised in defendants' supplemental briefs. See Cutter v. Wilkinson, (Cutter III), 423 F.3d 579 (6th Cir. Sept. 13, 2005) (on remand) (finding that RLUIPA is valid exercise of Congressional authority under the Spending Clause and Tenth Amendment); Benning v. Georgia, 391 F.3d 1299 (11th Cir. 2004)(holding that the RLUIPA is valid exercise of Congress's spending power and does not violate Establishment Clause) Charles v. Verhagen, 220 F. Supp. 2d 955 (W.D. Wis.2002), aff'd 348 F.3d 601 (7th Cir. 2003) (upholding RLUIPA against challenges under upholding RLUIPA against challenges under Establishment, Spending, and Commerce Clauses, and Tenth Amendment); Mayweathers v. Newland, 314 F.3d 1062 (9th Cir.2002) cert. denied, Alameida v. Mayweathers, 540 U.S. 815 (2003) (upholding RLUIPA against challenges under Establishment, Spending, and Commerce Clauses, Tenth Amendment, and separation of powers doctrine).

## II. DISCUSSION

In their most recent brief, defendants raise four challenges to RLUIPA: (A) Congress may not use the Spending Clause of Article I to regulate the religious accommodation policies of state prisons; (B) Congress may not interfere with the state's sovereign authority to make religious policy; (C) Congress may not use its Article I powers to circumvent the constitutional holding of the Supreme Court in Employment Division v. Smith, 494 U.S. 872, 890 (1990); and (D) Congress may not use the Commerce Clause of Article I to regulate the religious accommodation policies of state prisons.[7] None of these issues has yet been decided by the Supreme Court or the United States Court of Appeals for the Fourth Circuit.

### A. RLUIPA is a valid exercise of Congress' spending power.

The Spending Clause cedes to Congress the authority "to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. Art. I, § 8, cl. 1. Congress may employ the spending power "to further broad policy objectives by conditioning receipt of federal mon[ies]" on the recipient's compliance with federal directives. South Dakota v. Dole, 483 U.S. 203, 206-07 (1987). The Supreme Court in Dole identified four limitations on the exercise of the spending power to condition federal grants: (1) Congress must use its spending power to further "the general

---

[7]Defendants argue in an earlier brief that Madison's claims under RLUIPA should be dismissed because defendants enjoy immunity under the Eleventh Amendments against a RLUIPA lawsuit, Congress had no authority under § 5 of the Fourteenth Amendment to enact RLUIPA, and RLUIPA violates the Tenth Amendment and the separation of powers doctrine. See Def. Br., Dkt. #39, at 15, 18-20. In this brief, defendants also raise Spending Clause arguments not included in their most recent brief. Id. The court did not address these arguments in its January 2003 opinion, as the court found RLUIPA unconstitutional under the Establishment Clause. Although defendants have not moved in writing to renew all their earlier arguments since the court reinstated the case pursuant to the Fourth Circuit's remand, the court will, nevertheless, address these arguments here.

5

welfare"; (2) Congress must state all conditions on the receipt of federal funds "unambiguously" so as to "enabl[e] the States to exercise their choice knowingly, cognizant of the consequences of their participation"; (3) conditions attached to federal grants must be related "to the federal interest in particular national projects or programs"; and (4) conditions on federal funding must not violate any other constitutional provision. Cutter III, 423 F.3d at 585 (quoting Dole, 483 U.S. at 207-208). The Dole court then identified a fifth concern, that federal financial inducements must not be "so coercive as to pass the point at which pressure turns into compulsion." 483 U.S. at 211 (internal quotations omitted). This court concludes that RLUIPA rests comfortably within the Dole restrictions defining proper federal funding conditions.

**1.      RLUIPA promotes the general welfare.**

Defendants do not argue that RLUIPA fails to promote the general welfare. In determining whether RLUIPA satisfies this requirement, the court must "defer substantially to the judgment of Congress." Dole, 483 U.S. at 207. Congress enacted RLUIPA to ensure that state and local governments would not interfere unnecessarily with prisoners' right to practice their religious beliefs. See 146 Cong. Rec. S7774-75 (daily ed. July 27, 2000) (Joint statement of Sen. Hatch and Sen. Kennedy); 146 Con. Rec. E1563-64 (daily ed. Sept. 22, 2000) (statement of Rep. Canady); Religious Liberty Protection Act of 1999 Report, H.R. Rep. 106-219 106th Cong. 1st Sess. (July 1, 1999) at 9-10. RLUIPA, like other statutory prohibitions of discrimination on the bases of race, gender, and disability in federally funded programs, protects an important civil right against erosion. Specifically, it ensures that substantial burdens are not imposed on religious exercise "by simple want of careful, rational reflection or from some instinctive mechanism to guard against people" whose religious exercises "appear to be

6

different." Bd. of Trustees v. Garrett, 531 U.S. 356, 374-75 (2001) (Kennedy, J., concurring) (other citations omitted). Other courts have held that RLUIPA promotes the general welfare in satisfaction of the first Dole restriction. See Cutter III, 423 F.3d at 585 (citing Charles, 348 F.3d at 607) (RLUIPA furthers general welfare by attempting to protect prisoners' religious rights and to promote rehabilitation); Mayweathers, 314 F.3d at 1067 (RLUIPA furthers general welfare because it is designed to "guard against unfair bias and infringement on fundamental freedoms"). Substantially deferring to Congress' legislative judgment and adopting the arguments cited, this court holds that RLUIPA furthers the general welfare.

**2.     RLUIPA conditions are not ambiguous.**

All of defendants' ambiguity arguments fail. First, on its face, RLUIPA unambiguously puts states on notice that receipt of federal funds will obligate prison officials to justify substantial burdens on inmates' religious practices under the RLUIPA strict scrutiny standard.[8] § 2000cc-1(a), 1(b)(1). Second, the statute unambiguously declares that states accepting federal funds will be subject to suits filed by prisoners to enforce RLUIPA. § 2000cc-2(a); Benning, 391 F.3d at 1305-06.

Third, the facts-specific nature of the RLUIPA least restrictive means test does not render it ambiguous under the Dole restriction. So long as the spending condition provides clear notice that accepting federal funds carries a duty–in this case, a duty not to burden prisoners' religious

---

[8]Defendants argue that application of the statute in Madison's case is unfair because he first requested the Common Fare before the enactment of RLUIPA in September 2000. While this fact may affect any claim Madison hopes to bring for damages under RLUIPA, it does not dispose of his demands for permanent injunctive relief under the statute, nor does it affect the ambiguity aspect of the Spending Clause analysis. Moreover, Madison made a second request for the diet in March 2001, several months after RLUIPA's inception.

7

rights unnecessarily--the condition need not include a laundry list of all possible forms of conduct that would be improper. Benning, 391 F.3d at 1306. Indeed, as the Seventh Circuit noted, in RLUIPA, "Congress permissibly conditioned the receipt of federal money in such a way that each State is made aware of the condition and is simultaneously given the freedom to tailor compliance according to its particular penological interests and circumstances." Charles, 348 F.3d at 608. Fourth, other courts have consistently upheld RLUIPA's condition as unambiguous, despite its flexibility in application. Id.; Cutter III, 423 F.3d at 586 ("Congress need not delineate every instance in which a State may or may not comply with the least restrictive means test"); Benning, 391 F.3d at 1306-07; Mayweathers, 314 F.3d at 1067. For the reasons stated, this court also concludes that RLUIPA satisfies the second Dole limitation.

3.      **RLUIPA conditions are related to federal interests.**

Defendants argue that RLUIPA's requirement for prison officials to adopt a particular religious accommodation policy is unrelated to any federal interest because a) the RLUIPA condition attaches to monies appropriated for nonreligious purposes, b) prisons are not an instrumentality of commerce, and c) RLUIPA requires state prisons to provide accommodation of religious beliefs to a degree not required by the First Amendment. These arguments are without merit.

The Supreme Court's opinion in Dole set a minimal standard of relationship--a condition on federal funding is constitutional so long as it is "reasonably calculated to address [an] impediment to a *purpose* for which the funds are expended." Cutter III, 423 F.3d at 586 (quoting Dole, 483 U.S. at 208-09 (emphasis added)). The Court found that the challenged funding condition in Dole, a requirement that states raise their minimum drinking age, was "directly

8

related to one of the main <u>purposes</u> for which highway funds are expended–safe interstate travel." <u>Id.</u> at 208 (emphasis added). The relationship between the condition and the federal funds in <u>Dole</u> is no more direct than the connection in this case between accommodating inmates' religious rights and corrections funds provided with a primary purpose of assisting states in rehabilitating prisoners. Thus, defendants' first relatedness argument fails.

<u>Dole</u> does not limit the imposition of federal funding conditions only to circumstances involving instrumentalities of commerce. For example, the Rehabilitation Act ("the RA"), 29 U.S.C. § 794(a), which applies to all sorts of state agencies, including state prisons and universities, without any evidence that such agencies are also instrumentalities of commerce, was recently upheld as valid Spending Clause legislation. See <u>Constantine v. Rectors and Visitors of George Mason Univ.</u>, 411 F.3d 474, 211 (4th Cir. 2005). Therefore, defendants' second argument fails.

Defendants' third argument fails under <u>Dole</u> itself. The Court held that while the spending "power may not be used to induce the States to engage in activities that would themselves be unconstitutional," Congress is not prohibited from using the power to achieve indirectly objectives which it is not empowered to achieve directly. <u>Dole</u>, 483 U.S. at 210. The federal government has a clear interest in furthering protection of civil rights and in offering financial support only to those institutions that respect civil rights. <u>Constantine</u>, 411 F.3d at 492 ("Congress may, under the spending power, 'require that public funds, to which all taxpayers contribute, not be spent in any fashion which encourages, entrenches, subsidizes, or results in discrimination.'") (quoting <u>Lau v. Nichols</u>, 414 U.S. 563, 569 (1974) (alterations omitted). Therefore, the use of RLUIPA funding conditions to encourage states to provide inmates'

9

religious exercise more protection than that mandated under the First Amendment is clearly related to the furtherance of federal interests.

Finally, courts have consistently found RLUIPA to be "reasonably calculated to address" the federal government's interests in not subsidizing programs that infringe on religious practices and in promoting rehabilitation of state prisoners by protecting their religious liberty.[9] Cutter III, 423 F.3d at 586; Benning, 391 F.3d at 1307-08; Charles, 348 F.3d at 609; Mayweathers, 314 F.3d at 1067. For the reasons stated, this court also finds RLUIPA sufficiently related to federal interests to fall within the third Dole restriction.

**4.    RLUIPA does not violate independent constitutional principles.**

As herein discussed, the court concludes that no other constitutional principle bars the funding conditions in RLUIPA. Thus, the statute satisfies the fourth Dole limitation.

**5.    RLUIPA conditions are not coercive.**

Defendants state that for the 2005 fiscal year, the Department of Corrections received approximately $11,275,358 in federal funds, an amount representing 1.3% of the total VDOC budget of $848,228,630. The record includes no evidence that the VDOC uses federal monies to fund inmates' religious programs or accommodations. Based on these facts, defendants assert that the RLUIPA funding conditions are impermissibly coercive in violation of the fifth Dole factor because they require the VDOC to adopt a particular prison religious accommodation

---

[9]These courts have also rejected prison officials' alternative relatedness arguments, that the RLUIPA conditions are not tied to grants specifically designated for inmates' religious programs and because the strict RLUIPA conditions are disproportionate to the small amount of funds received by state correctional systems. See Cutter III, 423 F.3d at 587 (citing Charles, 348 F.3d at 609; Benning, 391 F.3d at 1307-08).

10

policy,[10] a relatively minor interest, or forego 100 percent of federal funds that would otherwise be received for all correctional purposes.

The Supreme Court has not defined the point at which a federal funding condition becomes coercive. Dole, 483 U.S. at 211. Other courts have suggested that the coercion inquiry is all but meaningless. See, e.g., Kansas v. United States, 214 F.3d 1196, 1202 (10th Cir. 2000) ("[T]he coercion theory is unclear, suspect, and has little precedent to support its application"). The Fourth Circuit, however, does not brush aside the coercion issue and has expressed "its displeasure with acts of Congress that place all-or-nothing conditions on significant amounts of federal funds in order to protect a relatively minor interest."[11] Bane v. Virginia Dept. of Corr., 267 F. Supp. 2d 514, 528 (W.D. Va. 2003) (upholding constitutionality of the Rehabilitation Act under the Spending Clause) (citing West Virginia v. U.S. Dep't of Health and Human Svcs., 289 F.3d 281, 291 (4th Cir. 2002); Virginia Dep't of Educ. v. Riley, 106 F.3d 559, 570 (4th Cir. 1997) (en banc), abrogated on other grounds by Amos v. Maryland Dep't of Pub. Safety and Corr. Services, 126 F.3d 589 (4th Cir.1997)). Relying on Riley, West Virginia, and Dole itself, the defendants assert that the Fourth Circuit employs a coercion analysis based on the percentage of federal funds that will be lost if the state violates funding conditions.[12] The court cannot agree.

---

[10]As RLUIPA does not direct prison officials to take any specific, affirmative action, defendants baldly mischaracterize the statute as mandating adoption of a particular policy. Moreover, the statement directly contradicts defendants' argument elsewhere that RLUIPA conditions are fatally ambiguous.

[11]At the same time, the Fourth Circuit notes, "Although there might be a federal funding condition that is unconstitutionally coercive, neither the Supreme Court nor any federal court of appeals has yet identified one." Constantine, 411 F.3d at 493.

[12]In their coercion analysis, the defendants also rely on College Savings Bank v. Florida Prepaid Post-Secondary Educ. Expense Bd., 527 U.S. 666, 687 (1999) ("where the constitutionally guaranteed protection of the States' sovereign immunity is involved, the point of coercion is

11

The Fourth Circuit recently rejected a Spending Clause challenge to section 504 of the Rehabilitation Act ("RA"), a statute that prohibits disability discrimination in federally funded programs or activities. Constantine, 411 F.3d at 493-94. The RA funding conditions, like RLUIPA's, attach to all funds a state program receives. Nevertheless, the Fourth Circuit centered its coercion inquiry on "the degree to which [the recipient, a state university,] actually relied on" the federal funds in question. Id. (emphasis added). The key factor here is not the amount or the percentage of funds to be lost if the recipient fails to comply with federal conditions, but the extent of the agency's reliance on or need for those funds. Consistent with the Constantine analysis, this court believes the appropriate coercion inquiry is whether the "funds conditioned are . . . so necessary to a state [agency] that the only practical choice is to accept the funds and the accompanying federal demands." Bane, 267 F. Supp. 2d at 528.

Defendants fail to demonstrate that the VDOC has no practical alternatives to acceptance of federal funds conditioned by RLUIPA. They state that if the VDOC lost the 1.3% of its budget now consisting of federal funds, the Commonwealth would be forced to divert money from other state agencies or raise taxes to cover the deficit. Def. Br., Dkt. #93, at 22. As they do not prove that these other funding choices are impractical, they fail to prove that RLUIPA's conditions are coercive. Choices that are merely unpopular or even fiscally difficult are not coercive under Dole and Constantine. The court concludes that RLUIPA meets the fifth Dole restriction.

---

automatically passed–and the voluntariness of the waiver destroyed–when what is attached to the refusal to waive is the exclusion of the State from otherwise lawful activity"). As RLUIPA expressly conditions voluntary receipt of federal funds rather than threatening exclusion from, or other sanction for, lawful activity, the College Savings Bank coercion concerns have no bearing on Madison's case. See Constantine, 411 F.3d at 495 n. 14.

In short, the court concludes that RLUIPA fits nicely within each of the restrictions set by the Supreme Court in Dole. Accordingly, the court holds that RLUIPA is a valid exercise of Congress' Spending Clause power.

### B. RLUIPA does not impermissibly interfere with the state's rights to make religious policy.

Defendants assert that (1) none of the enumerated powers of Congress in Article I of the Constitution authorizes Congress to interfere with states' ability to define the terms and conditions of punishment for its prisoners, and (2) even if Congress had such power, the Commonwealth of Virginia retains the exclusive authority to regulate religious policy in a zone of discretion between what the Establishment Clause prohibits and what the Free Exercise Clause requires. Def. Br., Dkt. #93, at 5. The Fourth Circuit characterized this claim as "a variant of the Commonwealth's many federalism-based or residual power contentions," Madison, 355 F. Supp. 2d at 322, and remanded it for consideration as such. Thus, this court will address defendants' sovereignty concerns, in turn, under the Tenth Amendment, the Eleventh Amendment, and the Fourteenth Amendment.[13]

---

[13] To the extent that defendants rely on the "federalism aspect of the Establishment Clause," Def. Br., Dkt. #93, at 5, this claim also fails. The defendants in the Cutter case raised this same Establishment Clause argument, but only Justice Thomas, in his concurring opinion, addressed it. See Cutter II, 125 S. Ct. at 2120 n. 7, 2126. Justice Thomas stated that the Establishment Clause is "best understood as a federalism provision that protects state establishments from federal interference," but one that at most, bars Congress from making laws that "interfere with a state establishment of religion." Id. at 2126, 2128. He expressly rejected this federalism argument with regard to RLUIPA, however, because although "it is a law respecting religion, [it is] not one respecting an establishment of religion." Id. at 2128. The court finds no support for defendants' position that a federalism component of the Establishment Clause prohibits all federal legislation in the "play in the joints" between what the Establishment Clause prohibits and the Free Exercise Clause requires. Id. at 1311.

13

1. **RLUIPA does not violate the Tenth Amendment.**

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X. Because the court herein concludes that RLUIPA is a valid exercise of Congressional authority under the Spending Clause, one of Congress' enumerated constitutional powers, defendants' Tenth Amendment argument fails on its face. See Dole, 483 U.S. at 210. "[T]he Tenth Amendment does not restrict the range of conditions Congress can impose on the receipt of federal funds, even if Congress could not achieve the goal(s) of those conditions directly." Charles, 348 F.3d at 609 (citing Dole, 483 U.S. at 210).

Moreover, contrary to defendants' assertions, RLUIPA does not dictate adoption of any particular religious accommodation policy.[14] Indeed, RLUIPA does not require states to take any affirmative action whatsoever; the statute merely obligates prison officials to refrain from imposing restrictions that substantially burden inmates' religious beliefs unless such restrictions are narrowly tailored to further "compelling" interests by the least restrictive means. Cutter III, 423 F.3d at 589; Benning, 391 F.3d at 1310 (citing other cases). Prison officials who subject themselves to RLUIPA conditions by accepting federal funds retain broad authority to refuse accommodations that would threaten compelling interests and to determine the manner of accommodating inmates' religious practice requests that do not threaten such interests. Finally, by rejecting federal funds, the VDOC may cleanly sidestep any interference RLUIPA may inflict

---

[14]In their earlier brief, defendants also raised Tenth Amendment claims under New York v. United States, 505 U.S. 144 (1992) and Printz v. United States, 521 U.S. 898 (1997). Cutter III expressly upheld RLUIPA against such a challenge because the statute "does not require the states to enact or administer a federal program." 423 F.3d at 589. On this reasoning, this court also rejects defendants' Tenth Amendment claims.

on the VDOC's ability to make religious policy at will, subject only to constitutional limitations. For these reasons, the court concludes that RLUIPA does not improperly regulate states or their affairs in violation of the Tenth Amendment.

**2. Defendants are not immune under the Eleventh Amendment from RLUIPA suits.**

The Eleventh Amendment has been broadly interpreted by the Supreme Court to grant states and their instrumentalities immunity from suit in federal court. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996). A state may waive its sovereign immunity, however, by consenting to be subject to suit. Bane, 267 F. Supp. 2d at 524. The private cause of action authorized in § 2000cc-2(a) of RLUIPA constitutes an unambiguous requirement that states who accept federal funds thereby waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA. Benning, 391 F.3d at 1306-07. Madison filed his lawsuit in August 2001, nearly a year after the enactment of RLUIPA in September 2000. Therefore, the court concludes that by accepting federal funds after the effective date of RLUIPA, the VDOC waived its Eleventh Amendment immunity against Madison's claims for damages under the statute.

**3. Defendants have no claim under the Fourteenth Amendment.**

Congress tried once before, by enacting the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, et seq., to impose the compelling interest/least restrictive means requirement on the states and their instrumentalities whose regulations might substantially burden religious exercise. The Supreme Court found that in passing RFRA, Congress exceeded its remedial or preventative authority under § 5 of the Fourteenth Amendment. City of Boerne v. Flores, 521 U.S. 507 (1997). Hence, RFRA does not apply to state prisons. Defendants insist that as a new branch from the same stump, with nearly identical language regarding

15

accommodation of inmates' religious practices, RLUIPA also violates the Fourteenth Amendment.

Unlike RLUIPA, however, RFRA relied solely on § 5 and no other constitutional provision in its attempt to impose religious accommodation requirements on the states. Id. at 516. RLUIPA requirements are rooted in the spending and commerce powers and do not rely on § 5 to mandate state compliance with a federal standard. Because the court herein finds that RLUIPA represents a valid exercise of the spending power, defendants' Fourteenth Amendment challenge fails.

### C. RLUIPA does not offend the principle of separation of powers.

Defendants next argue that Congress interfered with the core function of the Judicial Branch by enacting RLUIPA with the specific intent to circumvent the Supreme Court's decision in Employment Division v. Smith, 494 U.S. 872 (1990). Defendants complain that the Supreme Court rejected a strict-scrutiny standard as unworkable in addressing prisoners' Free Exercise claims.[15] Id. at 9-10. Defendants yearn to return to the rational basis review required for First Amendment claims under Turner, and the even less restrictive standard of Smith, which held that a neutral law of general applicability that infringes upon religious exercise is constitutional. 494 U.S. at 879. RLUIPA grants inmates' religious conduct much heightened protection by requiring prison officials to justify any substantial burden on religious practice by proving that

---

[15]See Turner v. Safely, 482 U.S. 78, 89 (1987) (rejecting "least restrictive means" test for constitutional claims in the prison context because "every administrative judgment [was] subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand," thus creating uncertainty that interfered with states' ability to "anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration").

16

the burden furthers a compelling interest by the least restrictive. Defendants assert that the enactment of RLUIPA violated the constitutional principle that one branch of government is prohibited from "encroaching on the central prerogatives of another," a principle better known as separation of powers. Miller v. French, 530 U.S. 327, 341 (2000).

The Seventh Circuit expressly found that RLUIPA raises no separation of powers concern:

> [T]he statute does not overturn the Court's constitutional interpretation in Smith. Rather, RLUIPA provides additional protection for religious worship, respecting that Smith set only a constitutional floor–not a ceiling–for the protection of personal liberty. Smith explicitly left heightened legislative protection for religious worship to the political branches.

Mayweathers, 314 F.3d at 1070 (citing Miller, 530 U.S. at 341-43; Smith, 494 U.S. at 890). See also Cutter III, 423 F.3d at 583 (citing Tr. of Oral Arg., Cutter II, 125 S. Ct. 2113 (2005) (RLUIPA is not "an effort to rewrite a rule of decision for all cases like RFRA was"). For these reasons, this court rejects defendants' claim that RLUIPA violates the principle of separation of powers.

D. **The Commerce Clause argument need not be addressed in this case.**

Given the court's finding that RLUIPA is a valid exercise of congressional spending power, the court need not, and therefore should not, address whether the statute is also valid under the Commerce Clause. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-47 (1936) (court should not pass on constitutional issue if not necessary for disposition of case). Defendants will be subject to RLUIPA conditions so long as they continue to accept federal funds, and they offer no evidence that the VDOC will discontinue accepting such funds at any time in the near future. Thus, the court cannot find that the Commerce Clause challenge is ripe

Case 7:01-cv-00596-JCT   Document 102   Filed 01/25/06   Page 17 of 18   Pageid#: 321

for disposition in this case. See Cutter III, 423 F.3d at 590 (citing other cases).

## III. Conclusion

For all of the reasons stated, this court concludes that RLUIPA is valid Spending Clause legislation that is not barred by the Tenth, Eleventh or Fourteenth Amendments, the separation of powers doctrine, or the Establishment Clause. The court, therefore, denies defendants' motion to dismiss Madison's RLUIPA claims on the ground that the statute is unconstitutional and allow the parties to brief defendants' remaining defenses.

Before briefing the constitutional questions at issue in this opinion, the parties asked the court in August 2005, to certify these constitutional issues for interlocutory appeal, pursuant to 28 U.S.C. §1292(b), and the court agreed. Finding that there is substantial ground for difference of opinion, and that an immediate appeal from the Court's decision may materially advance the ultimate termination of the litigation, the court will certify its rulings on the constitutionality of RLUIPA for interlocutory appeal, pursuant to §1292(b). An appropriate order shall be issued this day.

ENTER: This 25th day of January, 2006.

/s/ James C. Turk
Senior United States District Judge

Case 7:01-cv-00596-JCT  Document 102  Filed 01/25/06  Page 18 of 18  Pageid#: 322